[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] ORDER ON SUPPORT PETITION
Pursuant to Conn. Gen. Stat. § 46b-215, et seq., the State of Connecticut, through the Department of Social Services ("DSS") served a Verified Support Petition ("Petition") on the Defendant Father, seeking an order of current support and a finding of past due support for the minor child Coleisha, d.o.b. 10-26-86. The Petition, which is not authored in "plain English," alleges that the child is not receiving STATE OF CONNECTICUT financial assistance.[1] The Petition alleges that the Defendant has an ability to financially support this child, and that he has neglected to do so. Petition, Paragraphs 4 and 6. However, the Petition fails to allege the amount the petitioner claims the Defendant had an ability to pay, the total amount claimed due, or the period of time that it is claimed that the Defendant failed to support this child. At a hearing, the State offered evidence in support of its claim that it was entitled to reimbursement for assistance it provided to the minor child during the period of June 2, 1992 through April 30, 1996. It seeks reimbursement based upon the guideline calculations considering the Defendant's various abilities to support the child during this 4-year period.
The Petitioner Mother appeared and claimed that she is entitled to past support from the date the parties were married, in January of 1989, through to the present.
The Defendant Father denies the allegations of the Petition that he neglected to provide support for this child. He has raised several defenses to the allegations of neglected support, including, inter alia, that he lacked the financial ability to support the child from 1989-1992; that he provided financial support for the benefit of the child with direct cash payments made to the mother pursuant to the parties' verbal agreement, and that he provided financial support to the child through his purchase of items for the benefit of the child, with the knowledge and consent of the Mother, including a computer and a car. CT Page 4447-m Further, the Defendant claims that he owes no past support to the Mother because the Mother's domestic partner supported her and provided her with regular and reoccurring gifts. He also claims that he should not be obligated for financial support of the minor child during periods of time when he was denied access to the child and the Mother and child's whereabouts were unknown. Lastly, the Father claims that he should not be obligated for support during periods of time when he allegedly had physical custody of the child.
 January 1989 — June 1, 1992
The Petitioner Mother seeks past due support from the date of the parties' marriage, January 1989, until she began receiving assistance from the State of Connecticut, in June of 1992. The Father claims that he had no ability to financially support the child during this period of time. In support of this defense, he testified that he was residing in Jamaica until June 20, 1993. He then came to live with the Petitioner and his mother-in-law mother for a three-month period. The Petitioner moved out and he stayed with his mother-in-law for an additional three months. He testified that he was unemployed until 1993.
The Mother testified that in June of 1992, she sent money to the Father in Jamaica so that he could come live with her and her mother. Thus, the parties dispute when the Defendant came to Connecticut (1992 or 1993). However, the testimony is uncontroverted that the Plaintiff began receiving financial assistance for the support of the minor child in June of 1992. Records of the Defendant's earnings indicate that he first became employed, in Connecticut, in September of 1992.
Based upon the above-cited facts, the Defendant's defense that he had no ability to financially support the minor child prior to June of 1992 is credible. Because the Defendant Father had no ability to pay support, an arrearage finding of $0 is made for the time period of January 1989 through June 1, 1992.
 June 2, 1992 — April 30, 1996
During the period of June 2, 1992 through April 30, 1996, the Petitioner Mother was receiving financial assistance from the State of Connecticut. The Defendant Father had varying ability to pay child support during this period. Attached hereto as Court Exhibit "A," is a chart prepared by a DSS caseworker detailing the Defendant's ability based upon his actual earnings. This Exhibit is incorporated by reference herein. CT Page 4447-n
Arrears payable to the State of Connecticut for the period June 1, 1992 through April 30, 1996 are claimed to be in the total sum of $7,137. Evidence of $80, paid directly to the Petitioner was introduced. Therefore, the total arrearage claimed due to the State of Connecticut is $7,057, based upon the presumptive guidelines calculation.
 May 1, 1996 — December 5, 2002
The Defendant Father had varying ability to pay child support for the period of May 1, 1996 through December 5, 2002. Collectively attached as Court Exhibit "B," are guidelines worksheets prepared by DSS for the years 1996 through 2002.
For the period of May 1, 1996 through June 1, 1997, a presumptive guideline calculation indicates a weekly support obligation of $67. From June 2, 1997 through December 31, 1998, he had a presumptive guideline support obligation of $56 per week.
 Deviation
During the years 1994 through 1998, the Mother was living with another man who fathered her twin daughters, born in 1994. She testified that her domestic partner paid "100%" of all the household bills for her and all three of her children, including the child that is the subject of the pending Petition. The Mother testified that her domestic partner paid 100% of the housing costs, including 100% of the monthly rent or mortgage, 100% of all utilities, including electricity and heat, 100% of the cost of food for the entire family and 100% of the mother's transportation costs.
A 20% deviation from the presumptive guidelines is warranted based upon the Mother's extraordinary reduction of her living expenses as a direct result of the regularly recurring contributions of her domestic partner. This deviation is taken against the charging support obligation claimed due and owing the Petitioner Mother for the years 1994 through 1998. Reg. Conn. State Agencies § 46b-215a-3 (b)(1)(D).
Regarding the State's arrearage, no evidence was offered explaining the delay in the State's request for reimbursement for money paid out six to ten years ago. The Defendant would have been entitled to a deviation based upon the finding above, pursuant to Reg. Conn. State Agencies § 46b-215a-3 (b)(1)(D). He should not be precluded from asserting the deviation in the establishment of the order some six to ten years subsequent. Therefore, the State's arrearages are found in the amount of $5,903, consistent with this finding. CT Page 4447-o
From January 1999 through December 31, 2000, the Father's presumptive support obligation was $56 per week, pursuant to the guidelines calculation. In 1999, the Mother's domestic partner was no longer living with her or contributing to her expenses. Therefore, no deviation is warranted during this time period.
For the year 2001, the guidelines calculation produces a presumptive weekly support obligation of $100. For the year 2002, the presumptive child support is $103 per week. There is no evidence to support any deviation from the guidelines and the calculated obligation is fair and equitable.
 Defenses/Credits
In 1999 the Mother sought monthly support from the Defendant Father. The parties entered into a verbal agreement for the Defendant Father to pay to the Mother $100 per month, for the financial support of the minor child. The Defendant Father was able to produce $1,750 of receipts representing direct payments to the Mother pursuant to this verbal agreement. The Defendant Father testified that he sometimes paid the Mother in cash and did not have receipts for all payments he claimed credit (1/99-11/2002, 47 months, $4,700 credit).
He also claimed additional credits totaling $7,009.55. This amount represented items he purchased for the minor child, including gifts, a car and a computer. Thus, his total credits claimed equal $11,709.55 ($4,700 + $7,009.55). He asserts that the Mother was aware of the purchases and or requested that he make the purchases on behalf of the minor child.
The Mother disputes the amount allegedly paid to her directly by the Father. She further disputes that a credit should be given for the items purchased by the Father, including the child's car or computer. The Mother claims that the purchases by the Father for the benefit of the child, such as the computer and car, constitute a separate agreement between the Father and the child, distinct from his obligation to pay her weekly child support.
In Goold v. Goold,[2] the Connecticut Appellate Court found that ". . . situations may arise in which equitable considerations would permit a parent to credit, against past due support, payments, voluntary expenditures made on behalf of the child . . . (internal citations omitted). No universal or general principle has been articulated. Rather, the circumstances of each individual case are considered in CT Page 4447-p determining whether credit can be allowed . . . In all such cases, however, courts have recognized that the decision to allow or disallow credit lies within the sound discretion of the trial court." Id.11 Conn. App. at 223. The Goold Court provided the following guidance, "Although there is no general rule as to when circumstances require the allowance of such credit . . . such circumstances may include when a mother in some manner, consented to accept the father's direct support of the child as an alternative method of paying child support." Id.
at 274-75; See also, Pearson v. Gregor, FA 02 06633125 (Baird, F.S.M. October 11, 2002) (33 Conn.L.Rptr. 334) (finding support in well established Connecticut case law allowing credit for in kind contributions against an accumulated child support obligation).
In the pending action, the Mother testified to the verbal agreement for the Defendant Father to pay $100 per month in child support. Although the parties have a statutory right to enter into an agreement that affects the support of their children, the court has the power to reject such an agreement if it is in the best interests of the child to do so. Millerv. Miller, Superior Court, J.D of Hartford, Docket No. Fa 94-0532966 (January 22, 2002, Dyer, J.). The parties' verbal agreement did not adequately provide for the financial needs of the minor child, alone. Therefore, the verbal agreement to pay $100 per month was not in the best interests of the minor child.
The Father's testimony that he relied upon the parties' verbal agreement is credible. It is reasonable that he did not consider it necessary to maintain a receipt for each payment or in some way record or log each payment made over the last four years. The Mother did not maintain such records either. The Father is to be given a credit for the agreed upon weekly support of $100 per month, for a total credit of $4,700.
In addition, the Father's testimony that he has contributed to the support of the minor child is credible, and is supported by the evidence that he expended at least $7,009.55 in purchases on the child's behalf. It is not equitable for the Mother to claim, that despite her knowledge and consent of the Father's provision of direct financial support to the child, the Father should only be given credit for amounts paid directly to her, alone. The Father relied upon the parties' verbal agreement and the Mother's acceptance of direct support to the minor child. Although this agreement is not tantamount to a waiver of child support, the Father is entitled to a credit for the financial support he provided directly on behalf of the child.
The Father is to be credited a total sum of $11,709.55 against CT Page 4447-q the Petitioner Mother's arrearage.
Lastly, the Father claims that he had custody of the minor child in 1999, and should not be charged during the time that the child was in his custody. He further claims that he should not be charged for the periods of time when the Mother's location was unknown and she was living with her domestic partner. The Mother's testimony concerning a lack of change in custody is credible. It is possible that the child spent significant time with the Father over the years. However, the substantial evidence does not support a finding that a physical change of custody occurred. Therefore, the Father was not "excused" from his financial support obligation. As found above, a deviation from the guidelines calculated presumptive support obligation has been given based upon the regular contributions of the mother's domestic partner.
Based upon the above-cited facts as of November 2002, arrearages are found as follows:
 Presumptive Support Charging Time Period # Weeks Obligation Deviation Order Total
9/1/92-12/31/93 69 $14 $14.00 $ 966.00
1/1/94-11/6/94 44 $23 20% $18.40 809.60
11/7/94-4/30/96 77 $67 20% $53.60 4,127.20 ----------
Total charges to the STATE OF CONNECTICUT $ 5,902.80
 Less direct payments 80.00 ----------
Arrearage due to the STATE OF CONNECTICUT $ 5,822.80
5/1/96-6/1/97 56 $67. 20% $53.60 $ 3,001.60
6/2/97-12/31/98 84 $44 20% $35.20 2,956.80
1/1/99-12-99 52 $56 $56.00 2,912.00
1/1/00-12-31/00 52 $56 $56.00 2,912.00
1/1/01-12/31/01 52 $100 $100.00 5,200.00 CT Page 4447-r
1/1/02-11/4/02 44 $103 $103.00 4,532.00 ----------
Total charges $21,514.40
As of November 2002 Less Credits $11,709.55 ----------
Arrearage due petition Mother $ 9,804.85
Linda T. Wihbey dated: March 24, 2003
Family Support Magistrate